**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**EMPLOYER REINSURANCE CORPORATION,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 8:03-cv-1650-T-17MSS**

**LAURIER INDEMNITY COMPANY,**

    **Defendant.**

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Report and Recommendation issued by Magistrate Judge Mary S. Scriven on January 30, 2006, (Dkt. 99), on the parties' cross-motions for summary judgment, (Dkts. 71 and 72). The Court also has before it Defendant's Objections to the Report and Recommendation, filed February 17, 2006, (Dkt. 100), and Plaintiff's Response to Defendant's Objections to Report and Recommendation and Motion to Dismiss for Failing to Comply with Local Rule 6.02, filed March 6, 2006 (Dkt. 104).

**I.**　　**Standard of Review**

Pursuant to 28 U.S.C. §§ 636(b)(1)(c), a party may file written objections to the factual findings and recommendations of a magistrate judge within ten days of being served with the Report and Recommendation. The district judge shall make a de novo review of those portions of the R&R to which timely objections are made. *Gropp v. United Airlines, Inc.*, 817 F.Supp. 1558, 1561 (M.D. Fla.1993). The district judge shall evaluate portions of the Report and Recommendation not objected to under a clearly erroneous standard of review. *Id*. at 1562.

**CASE NO. 8:03-cv-1650-T-17MSS**

## II.    Factual and Procedural Background

This controversy involves a reinsurance dispute between Plaintiff, Employer Reinsurance Corporation ("ERC"), a reinsurer incorporated in Missouri with its principal place of business in Kansas, and Defendant, Laurier Indemnity Company ("Laurier"), an insurer incorporated in Bermuda, authorized to do business in Florida, and currently conducting business in the Middle District of Florida. Laurier is an insurer and subsidiary of Extendicare, Inc., a Canadian corporation that operates nursing homes throughout the United States, including Alpine Health and Rehabilitation Center ("Alpine") located in Pinellas County, Florida, during the years in question.

Pursuant to 28 USC §§ 2201 and 2202, ERC seeks declaratory relief regarding two contracts for reinsurance[1] entered into with Laurier in 1996 and 1997.

In 2002, Laurier settled a wrongful death suit[2] on behalf of Extendicare and allocated $2.5 million of that settlement amount to damages resulting from the alleged negligence of Extendicare at its Alpine location during 1996. From January 1, 1996 to January 1, 1997, Alpine, as one of Extendicare's businesses, was covered by a Laurier umbrella policy for commercial general and professional liability which was reinsured by the ERC contract effective during that period (the "1996 Certificate"). Laurier sought indemnification from ERC in the amount of $1.5 million[3] which ERC denied.

ERC moves for final summary judgment based on Laurier's failure to provide prompt notice pursuant to the terms of the 1996 Certificate and alleges it suffered prejudice as a result of such failure. ERC also contends that Laurier is in breach of its duty of good faith regarding its allocation of damages to ERC. Furthermore, if this Court should adopt Magistrate Judge Scriven's Report and Recommendation, ERC claims entitlement to partial summary judgment, in lieu of final summary judgment, on the following two issues: (1) that "follow the fortunes" clauses are not implied in reinsurance contracts; and (2) that prejudice due to failure to provide prompt notice is presumed under Florida law.

---

[1] Reinsurance Certificate Number FCO-0570736-03-1996 effective January 1, 1996 to January 1, 1997 and Number FCO-0583854-00-1997 effective January 1, 1997 to January 1, 1998.
[2] *Lindsay v. Extendicare, Inc., et al.*, Pinellas County, Sixth Circuit Case No. 01-003258C1.
[3] The indemnity amount differs from the allocated amount because Laurier bore the first $1 million of risk.

2

Laurier also moves for summary judgment arguing that ERC's late notice assertion is not valid because ERC received timely notice and, further, that ERC waived the right to timely notice by denying coverage, thus, suffering no prejudice.  Laurier also claims that the losses resulting from the 1996 damages were rationally allocated to ERC and that ERC is bound by the allocation under the "follow the fortunes" doctrine which Laurier asserts is implied in the 1996 Certificate.

After considering the parties' motions for summary judgment and respective oral arguments, Magistrate Judge Scriven found that the threshold issue of which state's law will govern the case must be determined before any of the other contract law issues can be decided. Since no clear, undisputed information is forthcoming from the parties regarding applicable law, she recommended the Court deny both motions.

The undisputed facts have been meticulously recounted in the Report and Recommendation, and, since no objection has been raised to that portion of the Report and Recommendation and there is no clear error in the facts presented therein, the Court hereby adopts the undisputed facts as its own.

Laurier has raised objections to the portion of the Report and Recommendation discussing the Choice of Law issue which this Court will examine.  Neither party has objected to the Magistrate Judge's descriptions of the 1996 Certificate, the notice clauses, or the nature and categories of reinsurance contracts.  Finding no clear error in that discussion, this Court hereby adopts said descriptions contained in the Report and Recommendation as its own.

ERC filed responses to Laurier's objections which also factor into this Court's discussion.


**III.     Plaintiff ERC's Motion to Dismiss**


ERC, along with its responses to Laurier's objections, has filed a Motion to Dismiss Laurier's objections for failing to comply with Local Rule 6.02 in that Laurier was one day late filing its objections.  No limitation on a party's right to review of a portion of the Report and Recommendation shall be imposed when the magistrate judge fails to inform the parties of consequences resulting from not timely filing objections. *See Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1995).  Furthermore, if objections to the Report and Recommendation

are not timely filed, yet, neither are they egregiously late nor has any prejudice resulted, a court may choose not to dismiss for the infraction. *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994).

      Here, the requisite notice clause informing parties of the consequences for not filing timely objections was not included in the Report and Recommendation, and, therefore, Laurier's right to review cannot be impeded. Moreover, since Laurier filed its objections only one day late, the filing was not egregiously late, and no prejudice has been claimed.

      Accordingly, ERC's Motion to Dismiss for Failing to Comply with Local Rule 6.02 is DENIED.

## IV.    Choice of Law—The Threshold Issue

      The 1996 Certificate does not specify a governing state law nor do the parties identify the conflict of law issue in their memoranda of law, thus, providing no necessary evidence to determine the question of which law to apply. The omission showcases the significance of a choice of law clause because the controversies revolve around the application of legal doctrines—whether to imply a "follow the fortunes" clause, whether there is a contractual obligation of notice, and whether to presume prejudice due to late notice—that are particular to contract law, traditionally state law, involving issues of ambiguity, modification, waiver, etc.

      **A.**    **Discussion**

      When a reinsurance contract between private parties is silent as to choice of law and determination of the appropriate governing state law is in dispute, a federal court sitting in a diversity case shall apply the substantive choice of law rules of the forum state and shall not resort to an illusory controlling body of reinsurance federal common law. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001) (stating that "the substantive law of the forum state . . . includes its choice-of-law rules"); *E.g. North River Ins. Co. v. Employers Reinsurance Corp.*, 197 F.Supp. 2d 972, 979 (S.D. Ohio 2002); *See also Boyle v. United Technologies Corp.,* 487 U.S. 500, 504, 506 (1988) (holding that litigation between private parties not involving the rights and duties of the United States is not governed by federal law and

explaining the criteria for a "unique federal interest" that may be determined by federal common law).

In the matter before this Court, the 1996 Certificate between ERC and Laurier contains no choice of law provision, and the parties disagree as to choice of law, with ERC contending for application of a federal common law and Laurier initially, during oral argument, claiming federal common law applies and, thereafter, in its objections, claiming Florida law applies. Therefore, since this Court's jurisdiction is based on diversity of citizenship and since the issue of contract interpretation is one that is substantive in that the applicable state law could greatly affect the determination of the issue, this Court must apply the substantive law which would be applied under the choice of law rules of Florida which are themselves substantive law. *Maryland Cas. Co. v. Williams*, 377 F.2d 389, 393-395 (5th Cir. (Miss.) 1967).

### B.     Laurier's Objections

Laurier objects to the Report and Recommendation, avers that Florida law governs the issues in this matter, and asks this Court to remand its Motion for Summary Judgment to Magistrate Judge Scriven with instructions to apply Florida law.

Relying on *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n. 19 (11th Cir. 1989), Laurier contends that where parties do not broach the issue of choice of law, the law of the forum state must control. Yet, in *Johns*, a corporate law case, the Court made its determination based on *two* reasons:

> (1) the presumption that the forum law controls where parties do not consider the choice of law issue, citing *Baltimore Orioles, Inc. v. Major League Players, Assn.*, 805 F.2d 663, 681 n. 33 (7th Cir. 1986) cert. denied, 480 U.S. 941 (1987), *and*

> (2) under *Florida choice of law rules* Florida corporate law would apply, relying on *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941).

The *Johns* Court indicated that, although Florida law had not particularly addressed choice of law in the relevant corporate context, it believed the Florida Supreme Court would apply the Restatement (Second) of Conflicts of Laws (1971) because the Florida courts had done so in other choice of law areas. *Johns,* 874 F.2d at 1458 n. 19. Therefore, the Court, rather than relying on a blanket determination that forum state law prevails where parties do not consider choice of law conflicts, applied the pertinent section of the Restatement[4] which provides that the

---

[4] *Restatement (Second) of Conflicts of Law* § 309.

5

law of the state of incorporation is controlling. *Id*. Thus, the Court applied Florida law because the company was incorporated in Florida and because the Court felt comfortable applying the dictates of the Restatement pursuant to Florida choice of law rules for corporate matters. *Id*.

The matter before this Court is a *contract* case, not a corporate case. However, if the *Johns* reasons were applied, Florida law would govern using the presumptive method of the first reason because Florida is the forum state. On the other hand, if Florida choice of law rules were applied using the second reason of *Johns*, Florida law may or may not govern.[5] Since both the first and second reasons used in *Johns* led to Florida law prevailing in that case, there was no conflict between the two outcomes. *Id*. Yet, under the facts before us, the outcomes may not be the same, and, therefore, one method must be chosen over the other.

This Court finds that the second reason used in *Johns*—applying the forum state choice of law rules to determine applicable law—would be the appropriate choice given that this second reason is supported by the United States Supreme Court decision in *Klaxon* as opposed to the Court of Appeals for the Seventh Circuit decision in *Balt. Orioles, Inc.* which the *Johns* Court relies on for its first reason. *Id*.

Laurier further relies on *Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1321-1322 (11th Cir. 2004) to support its assertion that the law of the forum state is presumed to govern where parties do not consider choice of law issues. *Frit*, while an insurance contract dispute, involved not only a contract for insurance but also a shareholder's agreement signed by the insured that included a choice of law provision mandating that the law of the Cayman Islands govern. *Id*. at 1321. In addition, the insurance company provided notice at the pretrial hearing that foreign law would be relied upon. Id. Since the parties did indeed consider choice of law issues, as demonstrated by the shareholders agreement and the pre-trial notice, it can hardly be inferred that the parties did not consider choice of law issues. Ultimately, the *Frit* Court relied on Alabama law because the insurance company, while giving notice, did not provide any authority from the Cayman Islands, filed its motion for summary judgment based on Alabama law, and, then, after the fact, argued on appeal that the district court decision was in error because the law of the Cayman Islands should have been applied. *Id*.

Here, neither party produced an agreement that includes a choice of law provision akin to the shareholders agreement in *Frit*, neither party provided notice that the law of a foreign

---

[5] This Court does not have the necessary evidence before it in order to determine which state's law would apply using a Florida choice of law analysis for contract matters.

country is to be applied, and neither party has failed to provide authority from their favorite jurisdiction.

Laurier also cites another case from the Court of Appeals for the Eleventh Circuit, *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237 (11th Cir. 1985), where the law of the forum was applied where a party did not raise a choice of law issue until it filed a motion to amend *after* summary judgment was granted to the opposing party, thereby attempting "two bites at the apple." *Id*. at 1239. The case holding reflected the Court's aversion to the raising of issues for the first time on a motion to amend judgment. Furthermore, no clear determination was made on the choice of law issue brought forward by the motion to amend other than it was not clear error in need of correction. *Id*.

In the present matter, this Court has the choice of law issue before it prior to making its judgment on the motions, and, therefore, *American Home* does not apply to this particular set of facts.

C.     **ERC's Assertions**

In its Response to Defendant's Objections, ERC asserts that the Magistrate Judge's Report and Recommendation should be adopted. In contending that a court need not apply the law of the forum state, ERC relies on *North River Ins. Co.*, 197 F.Supp. 2d at 979 where the court applied the choice of law rules of the forum state (Ohio), and, in so doing, held that the law of New Jersey, the state with the more significant relationship to the contract, controls. However, ERC argues not for the application of the choice of law rules of the forum state as supported in its cited case, *North River*, but for the application of a federal common law of reinsurance.

In order for federal common law to control, a case must involve "uniquely federal interests." *Boyle,* 487 U.S. at 504. In *Boyle*, Justice Scalia elucidated that such interests are rare and generally occur only when the case involves United States contracts, official acts of federal officers, or federal defense contracts. *Id.* at 504-506. By and large, where the litigation is between private parties, federal law is not controlling. *Id*. at 506. As the Report and Recommendation explained, the *North River* Court rejected the premise that a reinsurance federal common law controlled when, in applying Ohio's (the forum state's) choice of law rules, it held that New Jersey law must govern the contract issues in dispute. *North River Ins. Co.*, 197 F.Supp. 2d. at 985.

7

In the instant case, no unique federal interest exists because no U.S. contracts or officers are involved, and the litigants are indeed private parties.

Therefore, this Court holds that no reinsurance federal common law controls and the matter is properly resolved by first discerning the applicable state law using a Florida choice of law analysis for contract matters. *Id*.

### V.     *Lex Loci Contractus*

#### A.     Discussion

In order to promote the ability to enter into valid, stable contracts in a modern migratory society, Florida's substantive choice of law rules generally apply the *lex loci contractus* doctrine to insurance contract disputes where the contract contains no choice of law provision. *Prime Ins. Syndicate v. B.J. Handley Trucking*, 363 F.3d 1089, 1091 (11th Cir. 2004); *Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1236 (11th Cir. 1995).

The *lex loci contractus* doctrine directs that the law of the state where the contract was executed governs the interpretation of such contract. *Prime Ins. Syndicate*, 363 F.3d at 1091. In *Prime*, where the plaintiff insurer was the provider of automobile liability insurance to a trucking company whose employee was involved in an automobile accident, the Court relied on *Fioretti,* 53 F.3d at 1236 (11th Cir. 1995), in finding that the *lex loci contractus* doctrine generally applies to choice of law disputes involving contracts. *Prime Ins. Syndicate*, 363 F.3d at 1091.

As follows, the *lex loci contractus* doctrine applies to choice of law disputes involving reinsurance contracts containing no choice of law provisions where such reinsurance contracts cover general or professional liability policies insuring risks without a fixed location. *Id*.; *Fioretti*, 53 F.3d at 1236; *Wackenhut Services, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Penn.*, 15 F.Supp. 2d 1314, 1320 (S.D. Fla. 1998). In a commercial general liability policy insuring multiple risks, an insured risk is without a fixed location where the location is dependant upon where the business is currently operating. *Id*. (finding that the place of the insured risk is not fixed and that the *lex loci contractus* doctrine applies where the contract insures various risks in various states and the place of the risk depends on where the business is operating).

8

Here, the 1996 Certificate provides coverage for Laurier's umbrella policy providing commercial general and professional liability insurance to multiple Extendicare businesses in various states, but it does not specifically insure the Alpine property and it does not contain a choice of law provision. In addition, the location of the insured risk, Alpine, is not fixed, not only because the real property is not insured, but also because the location is dependant upon where Extendicare is currently operating its facilities. Therefore, the *lex loci contractus* doctrine applies to the choice of law dispute before us regarding the 1996 Certificate.

**B.      Laurier's Objection**

Laurier asserts that this Court should apply the holding in *Shapiro v. Associated Int'l. Ins. Co.* which allows for a specific exception to the *lex loci contractus* doctrine for contracts insuring real property. 899 F.2d 1116, 1119-1121 (11th Cir. 1990). The *Shapiro* Court applied the state law in which the insured real property is located. *Id*. at 1120. Laurier argues that since Alpine is one of the insured risks and is located in Florida, Florida law should apply.

In *Shapiro*, the contract at issue was an insurance policy for real property which insured against occurrences at a specific fixed location, a club in Florida. *Shapiro*, 899 F.2d at 1119; *Fioretti*, 53 F.3d at 1236. The Court applied the rationale that the transient nature of society would not affect contracts involving the insurance of immovable real property. *La Farge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515-1516 (11th Cir. 1997). Unlike other types of insurance contracts, such as life insurance where the insured party can move from one state to another, in a contract insuring real estate, the place of the insured risk is fixed. *Id*.

Conversely, here, the 1996 Certificate at issue provided *reinsurance* coverage for Laurier's liability policy which covered not only the Alpine facility where the underlying alleged negligence occurred but multiple Extendicare businesses located in multiple states. Further, the Laurier policy was not a contract insuring real property but a contract providing commercial general and professional liability insurance to a corporation operating nursing homes and assisted living facilities throughout the nation. Since the basis for the *Shapiro* exception depended on the fixed location of a piece of real property, it does not apply in the instant case. *Shapiro*, 899 F.2d at 1119; *Wackenhut Services, Inc.*, 15 F.Supp. 2d at 1320 (finding that the *lex loci contractus* doctrine applies to contracts insuring various risks in various states where the place of the risk is not fixed and depends on where the business is currently operating).

**CASE NO. 8:03-cv-1650-T-17MSS**

Hence, this Court holds that the choice of law matter before it is properly resolved by an analysis using the doctrine of *lex loci contractus*.

## VI.     Applicable State Law

### A.     Discussion

The Report and Recommendation finds that the doctrine of *lex loci contractus* applies the law of the state where the contract was executed and requires a determination of where the final act to execute the contract occurred. *See Prime*, 363 F.3d at 1091. The Report and Recommendation also finds that a factual dispute remains concerning the applicable state law, and, therefore, the contract provisions at issue involving "follow the fortunes" provisions, notice requirements, prejudice and relative burdens cannot be resolved without first discerning applicable state law. *See generally North River*, 197 F.Supp. 2d at 972.

### B.     Laurier's Objections

Laurier contends that even if the *lex loci contractus* doctrine prevails in a choice of law analysis, ultimately Florida law will control because strict application of the doctrine will result in Wisconsin law controlling, and the two states have an equally deficient amount of reinsurance case law. Thus, reliance on federal law and the law of other jurisdictions will be necessary and will lead to the same result regardless of which state law governs. Relying on *Shapiro*, Laurier submits that where the law of the foreign state and the law of the forum state converge, the law of the forum state controls. 899 F.2d at 1118, n. 2. However, Laurier provides no authority for its proposition that Wisconsin law, the law of the foreign state, and Florida law, the law of the forum state, are the same.

In any event, whether or not Laurier's contention is true is not pertinent until it is known which states' laws may be implicated in deciding where the final act to execute the contract occurred—Laurier submits that Wisconsin is the state where the contract was issued, and ERC submits that either Bermuda, Wisconsin or Georgia law would govern under *lex loci contractus* but at the same time contends that a federal common law applies. This Court has no record evidence before it that Wisconsin, Bermuda, or Georgia is where the execution of the contract took place, and the contract itself sheds no light on the place of its execution.

10

**CASE NO. 8:03-cv-1650-T-17MSS**

Laurier also asserts that a federal court rendering a decision based on state law must make an educated guess as to how the state's highest court would rule on issue. As discussed above and in the Report and Recommendation, in the matter before this Court it remains to be narrowed down which states' laws are implicated so that any ruling would be premature.

Laurier further objects to the examples in the Report and Recommendation showing how the analyses of various contract issues such as notice, prejudice, and "follow the fortunes" clauses are fact-specific endeavors which can vary from state to state and, therefore, can only be resolved by applying applicable state law. Again, since these discussions in the Report and Recommendation are examples and the applicable state law has not been determined, any discussion of these issues is also premature at this juncture.

**VII.   Conclusion**

After thorough review, the Court adopts the Magistrate Judge's Report and Recommendation as to the following:

   (1)   the undisputed facts;

   (2)   the descriptions of the 1996 Certificate, the notice clauses, and the nature and categories of reinsurance contracts;

   (3)   the determination that no reinsurance federal common law controls this matter;

   (4)   the determination that applicable state law is to be decided using Florida choice of law rules for contract matters;

   (5)   that Florida courts generally apply the doctrine of *lex loci contractus* to contract choice of law disputes; and

   (6)   that the *lex loci contractus* doctrine requires determination of the location of contract execution.

The Court denies the Magistrate Judge's Report and Recommendation as to the denial of the motions for summary judgment, and remands it back to the magistrate judge for decisions on the issues brought forth in the motions for summary judgment, with instructions to apply the *lex loci contractus* doctrine to first resolve the choice of law dispute using whatever means the magistrate judge considers appropriate to obtain the necessary evidence in order to determine

where the contract was executed.  The Court also instructs the magistrate judge that she may provide alternative decisions on the issues based on the law of divergent jurisdictions in the event no information is forthcoming as to place of contract execution if the magistrate judge deems such is necessary in order to speed resolution of the matter.  Accordingly, it is

**ORDERED** that the Report and Recommendation dated January 30, 2006, (Dkt. 99), be **PARTIALLY ADOPTED** and **INCORPORATED BY REFERENCE HEREIN** as to the issues listed above, **DENIED** as to the denial of the motions for summary judgment, (Dkts. 71 and 72), and **REMANDED WITH INSTRUCTIONS** to apply the decisions made herein to the motions for summary judgment.  It is also **ORDERED** that the Plaintiff's motion to dismiss, (Dkt. 104), be **DENIED**, and the Defendant's Objections, (Dkt. 100), be **OVERRULED**.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 19th day of June 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:  All parties and counsel of record.