UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EMPLOYER REINSURANCE CORPORATION,**

    **Plaintiff,**

v.                                          Case No. 8:03-cv-1650-T-17MSS

**LAURIER INDEMNITY COMPANY,**

    **Defendant.**

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Report and Recommendation issued by Magistrate Judge Mary S. Scriven on February 27, 2007, (Dkt. 120) on reconsideration of the parties' cross-motions for summary judgment, (Dkts. 71. 72).  The Court also has before it Defendant's Objections to the Report and Recommendation, filed March 16, 2007, (Dkt. 121), and Plaintiff's Memorandum of Law in Response to Defendant's Objections to Report and Recommendation, filed April 2, 2007, (Dkt. 122).

**I.     Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(c), any party may serve and file written objections to the proposed factual findings and recommendations of a magistrate judge within ten days of being served with the Report and Recommendation.  The district judge shall make a de novo review of those portions of the Report and Recommendation to which timely objections are made.  Gropp v. United Airlines, Inc., 817 F.Supp. 1558, 1561 (M.D. Fla.1993).  The district judge shall assess portions of the Report and

Recommendation not objected to under a clearly erroneous standard of review. Id. at 1562.

## II.     Factual and Procedural Background

This controversy involves a reinsurance dispute between Plaintiff, Employer Reinsurance Corporation ("ERC"), a reinsurer incorporated in Missouri with its principal place of business in Kansas, and Defendant, Laurier Indemnity Company ("Laurier"), an insurer incorporated in Bermuda and authorized, licensed, and registered to do business in Florida, including the Middle District of Florida, where they are currently conducting business. Laurier insures, and is a wholly owned subsidiary of, Extendicare, Inc., ("Extendicare") a Canadian corporation that operates nursing homes, assisted living facilities, and retirement centers throughout the United States, including Alpine Health and Rehabilitation Center ("Alpine") located in Pinellas County, Florida, during the years in question. All insurance, reinsurance, and claims functions were handled by another partially owned Extendicare subsidiary, the Northern Group, Inc. (the "Northern Group") through their office in Atlanta, Georgia, where the reinsurance contracts were executed.

ERC seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 regarding two contracts for reinsurance[1] through the years of 1996 and 1997 with Laurier.

In 2002, Laurier settled a wrongful death suit[2] on behalf of Extendicare arising out of Alpine. Laurier allocated $2.5 million of that settlement to damages resulting from the alleged negligence of Extendicare at the Alpine location during 1996. During the time period from January 1, 1996 to January 1, 1997, Alpine, as one of Extendicare's facilities, was covered by a Laurier umbrella policy covering primary general and

---

[1] Reinsurance Certificate Number FCO-0570736-03-1996 effective January 1, 1996 to January 1, 1997 and Number FCO-0583854-00-1997 effective January 1, 1997 to January 1, 1998.
[2] Lindsay v. Extendicare, Inc., et al., Pinellas County, Sixth Circuit Case No. 01-003258C1.

2

professional liability. ERC reinsured this policy under a contract effective during that period (the "1996 Certificate"). After the settlement, Laurier sought indemnification from ERC in the amount of $1.5 million[3] which ERC declined to pay at that time.

After both parties moved for summary judgment, Magistrate Judge Scriven found that the threshold issue of which state's law would govern the case must be determined before any other issues of contract law could be decided. This Court adopted that Report and Recommendation over the objections of Laurier as to the Choice of Law portion after de novo review. Neither party objected to the undisputed facts, the descriptions of the 1996 Certificate, the notice clauses, or the nature and categories of the reinsurance contracts, the determination that no reinsurance federal common law controls this matter, the determination that applicable state law is to be decided using the Florida choice of law rules for contract matters, that Florida courts generally apply the doctrine of lex loci contractus to contract law disputes, and that the lex loci contractus doctrine requires determination of the location of contract execution. Finding no clear error, those portions were also adopted.

ERC now moves again for final summary judgment based on Laurier's failure to provide prompt notice of the Lindsey claim, as required under the terms of the 1996 certificate. ERC contends that such delay was unreasonable as a matter of law and alleges that it suffered prejudice as a result. ERC also contends that they are not bound to follow Laurier's allocation theory due to a breach of good faith. Additionally, should this Court adopt Magistrate Judge Scriven's Report and Recommendation denying final

---

[3] The indemnity amount differs from the allocated amount because Laurier bore the first $1 million of risk under the contracts.

3

summary judgment, ERC claims entitlement to partial summary judgment because "follow the fortunes" clauses are not implied in reinsurance contracts.

Laurier also moves for summary judgment arguing that ERC's late notice assertion is invalid because ERC received timely notice as determined by the judgment of the reinsured and lack of prejudice to ERC.  Further, ERC waived the right to a late notice defense by denying coverage and failing to assert the defense in a timely manner.  Laurier also claims that the allocation of losses to 1996 was rational, thus binding ERC under the "follow the fortunes" doctrine which Laurier asserts is implied in the 1996 Certificate.

After considering the parties' amended motions for summary judgment and respective oral arguments, Magistrate Judge Scriven found there to be a genuine issue of material fact as to whether ERC actually denied coverage, thus waiving any late notice defense.  She also found a factual dispute as to whether Defendant used due diligence in notifying ERC of the Lindsey claim.  Accordingly, she recommends the Court deny both motions for summary judgment on the issues of waiver of late notice and timeliness of notice, and allocation of loss.  However, finding that the reinsurance contract was unambiguous, Magistrate Judge Scriven found no "follow the fortunes" clause within the four corners of the reinsurance contract, and found that none should be implied.  As such, she recommends ERC's motion for partial summary judgment on the issue of the "follow the fortunes" clause be granted.

No one has raised objection to the Choice of Law portion of the Report and Recommendation, and as such, having reviewed that portion for clear error, this Court hereby adopts said portion as its own.

4

Laurier has raised objections to the portions of the Report and Recommendation awarding partial summary judgment to ERC on the "follow the fortunes" issue, denying summary judgment on the allocation issue, and denying summary judgment on the notice issues. This Court will examine those portions de novo.

ERC filed responses to Laurier's objections which also factor into this Court's discussion.

### III.    Follow the Fortunes

#### A.    Discussion

There is no Georgia caselaw on the precise issue at hand, perhaps because most insurance and reinsurance cases end in arbitration due to binding arbitration clauses expressly enumerated in the contract. Whatever the reason, in the absence of precise caselaw, general contract law should apply. Under Georgia contract law, parol evidence is inadmissible to add to, take from, or vary a written contract. Ga. Code Ann. § 13-2-2(1). Absent ambiguity, the Court need only look within the four corners of the contract to ascertain the terms. Equifax, Inc. v. 1600 Peachtree LLC, 601 S.E.2d 519, 523 (Ga. Ct. App. 2004).

The 1996 Certificate did not contain a "follow the fortunes" clause. The agreement was two pages in length, but nowhere in those two pages was any express enumeration of a "follow the fortunes" clause nor implication thereof. Laurier contends that the contract's silence on the issue of "follow the fortunes" constitutes ambiguity, and, thus the Court should allow custom to imply the clause into the reinsurance contract. On the other hand, ERC would not have the express terms of the contract varied by implying the clause into the contract.

Laurier objects to the Report and Recommendation so far as it limits construction of the contract to the four corners, and asks this Court to overrule Magistrate Judge Scriven.

Relying on <u>Sharple v. Airtouch Cellular of Geor., Inc.</u>, 551 S.E.2d 87 (Ga. App. 2001), Laurier contends that silence on an issue constitutes ambiguity, thus allowing custom and usage to be considered in the construction of the contract. In <u>Sharple</u>, the plaintiff contracted for cellular telephone service to be charged by the minute, but the contract was silent on how partial minutes were to be billed. <u>Id.</u> at 88. She was subsequently charged for the full minute whenever any part of the minute was used. <u>Id.</u> The issue was whether the contract was ambiguous, allowing outside evidence of trade custom in the construction of the contract. <u>Id.</u> at 89.

The Court held that the contract was ambiguous after looking at the four corners and, thus, that evidence of trade custom could be admitted. <u>Id.</u> at 90. Parol evidence such as this is generally only admissible when, after looking only at the four corners of the contract, ambiguity remains. <u>Id.</u> at 89. The Court reasoned that neither party's preferred construction of the contract was clear from the face of the contract, and it was impossible to ascertain what the parties meant by the billing unit just looking within the four corners, thus trade custom was used. <u>Id.</u> at 89-90.

In contrast, the 1996 Certificate in the instant reinsurance case contains no such express term that requires extrinsic evidence to clarify its meaning. Laurier contends that <u>Sharple</u> allows for trade custom to enter as evidence whenever a contract is silent on any matter. This defies the established law of contracts, and <u>Sharple</u> simply does not support this contention. <u>Sharple</u> stays well within the bounds of contract law, and merely

provides that when an express term within a contract remains ambiguous after looking at the four corners of the document, parol evidence is admissible.

Ambiguity is defined within Georgia law as:

> [D]uplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and [it] also signifies...doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations.

Holcim, Inc. v. ABDG, Inc., 596 S.E.2d 197, 200 (Ga. Ct. App. 2004), citing Early v. Kent, 215 Ga. 49, 50 (Ga. 1959).  There nothing of that sort in this reinsurance contract. There is simply a complete absence of the clause, or anything suggesting the clause.

While there are certainly benefits and numerous public policy considerations supporting enforcement of the "follow the fortunes" doctrine in the world of reinsurance, American Bankers Insurance of Florida v. Northwestern National Insurance Co., 198 F.3d 1332, 1335 (11th Cir. 1999), it is not even suggested that it has to be implied into all reinsurance contracts, even those that do not even appear to contemplate one.  The parties negotiating reinsurance contracts are both sophisticated entities dealing at arms length, and familiar with drafting contracts.  There is nothing to prevent Laurier, or any other potential reinsured, from including an express "follow the fortunes" clause *at the time of contract formation* should that clause be particularly important or desirable to them.  As it stands, there simply is no express "follow the fortunes" clause in the 1996 Certificate, and this Court cannot go outside the laws of contract construction and outside the four corners of an unambiguous contract to add a clause that was not bargained for.

Therefore, this Court holds that the "follow the fortunes" clause shall not be implied into the 1996 Certificate.

7

**IV.     Allocation**

ERC argues that Laurier improperly, and in bad faith, allocated loss in settling the Lindsey claim to the 1996 year. (Dkts. 72, 115, 122) ERC asserts that under either a single or multiple occurrence theory, the 1996 Certificate would not be implicated, either because all of the loss should have been allocated to 1999 under a single occurrence theory or because each year couldn't have triggered coverage on its own under a multiple occurrence theory.

Alternately, Laurier claims their allocation was reasonable, rational, and appropriate as a continuing series of the same kind of wrongdoing. (Dkts. 71, 114, 121) ERC failed to suggest any relevant legal authority that supports its motion for summary judgment, and they also fail to cite to evidence which establishes the absence of a genuine issue of material fact required. FED. R. CIV. P. 56(C); see generally Celotex v. Catrett, 477 U.S. 317 (1986). While ERC's motion for summary judgment was denied, this does not mean that Laurier's should be granted. The motions are not mutually exclusive. Laurier's entire summary judgment motion was denied, including any portion requesting summary judgment on the issue of allocation. Each case is different, and, when asking whether the allocation is reasonable or proper, there is a material factual issue that can only be decided by the jury. Summary judgment would, therefore, be improper.

**V.     Waiver of the Late Notice Defense**

Both parties agree that late notice defenses can effectively be waived by the denial of coverage.[4] See State Farm Mutual Automobile Insurance Co. v. Wright, 224

---

[4] The cases cited to support this deal with primary insurance, but neither party has objected to the use of Georgia primary insurance law as to the issue of notice.

S.E.2d 796, 798 (Ga. Ct. App. 1976); <u>Norfolk and Dedham Mutual Fire Insurance Co. v. Cumbaa</u>, 115 S.E.2d 167, 169 (Ga. Ct. App. 1973); <u>New York Underwriters Insurance Co. v. Noles</u>, 115 S.E.2d 474, 476 (Ga. Ct. App. 1960). The question of whether the defense has been waived is another issue, however. "The issue of whether an insurer has waived strict compliance with a notice provision is normally a question of fact for the jury." <u>Sentry Insurance Co. v. Fremichael</u>, 472 S.E.2d 440, 443 (Ga. Ct. App. 1996).

    If it were absolutely clear that ERC had absolutely and unequivocally denied coverage in the instant case, there would be no question of fact for the jury to decide. This, however, is not the case. Viewing the evidence in the light most favorable to ERC, the nonmoving party, it is impossible for this Court to categorically conclude that coverage was denied. The cases that Laurier cites are not relevant to solving the problem at hand, because they only further elucidate the tenet that an absolute denial of coverage constitutes waiver of strict compliance with late notice and other provisions. Upon that much all parties can agree. Citing that rule in many ways, however, does not make the genuine issue of material fact that exists as to whether or not ERC has absolutely denied coverage go away. The email sent from Mr. Ashley, a representative of ERC, to Mr. Zabler, a representative of Laurier, in which ERC explains their belief that "any reasonable insurer would agree that this exposure absolutely arises from the latter policy years" and "demands" that the case be settled as such creates a factual question when viewed in the light most favorable to the nonmoving party, ERC. (Dkt. 70, Ex. 56) The disclaimer at the end of it adds to the uncertain meaning of the email by explaining that "this letter is not intended to contain a fully analysis of coverage with regard to this claim. ERC hereby reserves all legal rights and those contained within the certificate of

9

reinsurance." It is therefore unclear whether the email amounted to a denial of coverage or an initial objection to the allocation that needed clarification. This uncertainty is reflected in the other evidence presented as well. This Court is not comfortable making that determination, but would send it to a jury.

## VI.     Timeliness of Notice

After Magistrate Judge Scriven's Report and Recommendation, there was no objection by either party to her finding that under paragraph V of the 1996 Certificate the subjective standard applied as to when Laurier was obligated to notify ERC. That portion was reviewed and no clear error was found. As Magistrate Judge Scriven explained, Laurier's subjective analysis of when, and if, the Lindsey Claim triggered notice to ERC governs here unless it was unreasonable as a matter of law. See Evanston Insurance Co. v. Stonewall Surplus Lines Insurance Co., 111 F.3d 852, 860 (11th Cir. (Ga.) 1997). As long as Laurier was duly diligent and took the proper steps to make an educated decision regarding the Lindsey Claim, and if it would trigger ERC's levels of coverage, their notice would be sufficient and reasonable as a matter of law. Id. at 861.

That said, a factual dispute exists as to whether Laurier exercised due diligence in notifying ERC. ERC asserts that Laurier was aware in 2001 that the ERC policy would be implicated based on notes in the handwriting of Laurier's initial claims adjustor who ceased work on the case in 2001 allocating 25% of the loss to ERC. (Dkts. 72, 115, 122) On the other hand, Laurier contends that allocation of the Lindsey loss did not take place until 2002. (Dkt. 70) They offer as proof the testimony of everyone affiliated with Laurier.

The evidence offered is not a mere scintilla and it is neither conjecture nor supposition.  It is evidence that reasonably conflicts with evidence offered by Laurier.  It is up to the jury, as the finder of fact, to determine which evidence is to be preferred and believed.  Therefore, summary judgment on this issue would also be improper.

## VII.    Prejudice

Because there are factual issues involved in the notice defenses raised by ERC, it is unnecessary to continue on to determine whether or not ERC was prejudiced by late notice.

## VIII.   Conclusion

After thorough review, the Court adopts the Magistrate Judge's Report and Recommendation as to the following:

1) the choice of Georgia law;

2) the denial of summary judgment on the issue of waiver of late notice;

3) the denial of summary judgment on the issue of timeliness;

4) the denial of summary judgment on the issue of prejudice;

5) the denial of summary judgment on the issue of allocation;

6) the partial granting of summary judgment for ERC on the issue of the "follow the fortunes" clause.

Accordingly, it is

**ORDERED** that the Report and Recommendation dated February 27, 2007, (Dkt. 120), be **ADOPTED** and **INCORPORATED BY REFERENCE HEREIN** as to the issues listed above.  It is also **ORDERED** that the Defendant's Objections, (Dkt. 121), be **OVERRULED.**

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 25th day of June 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.

12